IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JENNIFER PICKLESIMER           )
                               )
v.                             )        No. 3:13-1457
                               )
CAROLYN W. COLVIN,             )
        Acting Commissioner of )
        Social Security        )


To: The Honorable Todd J. Campbell, District Judge


## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the

final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided

by the Social Security Act ("Act").

Upon review of the administrative record as a whole, the Court finds that the

Commissioner's determination that Plaintiff is not disabled under the Act is supported by

substantial evidence in the record as required by 42 U.S.C. § 405(g), and that Plaintiff's motion

for judgment on the administrative record (Docket Entry No. 14) should be DENIED.


## I. INTRODUCTION

Plaintiff protectively filed applications for DIB and SSI on May 22, 2009.  *See* Transcript

of the Administrative Record (Docket Entry No. 10),[1] at 101, 207-17.  She alleged a disability

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation
"AR" followed by the corresponding page number(s).

onset date of April 14, 2008. Her claims were denied initially and upon reconsideration. AR 94-97. A hearing was held before Administrative Law Judge ("ALJ") David A. Ettinger on June 9, 2011. AR 42-62. The ALJ issued an unfavorable decision on July 7, 2011. AR 98-111. On January 17, 2012, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case to the ALJ for further analysis. AR 117-121.

On July 31, 2012, a second hearing was conducted by the ALJ. AR 64-93. The ALJ issued an additional unfavorable decision on September 6, 2012. AR 15-35. On October 25, 2013, the Appeals Council denied Plaintiff's second request for review, thus rendering the ALJ's September 6, 2012 decision the final decision of the Commissioner. AR 1-5.


## II. THE ALJ'S FINDINGS

The ALJ issued his additional unfavorable decision on September 6, 2012. AR 15-35. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since April 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: headaches, seizure disorder, a history of right hand laceration, mild left neuroforaminal stenosis at L5-S1, bipolar affective disorder, and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

***

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

2

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) reduced by the following limitations: she cannot more than frequently use her dominant right hand for handling, fingering, or feeling; must avoid all exposure to hazardous work environments; is limited to simple repetitive work; cannot maintain attention or concentration for more than two hours without interruption; and cannot have more than occasional interaction with the public.

***

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on November 16, 1983, and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

***

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 14, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 20-34.


### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence

to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 CFR §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 CFR §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting."

20 CFR § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 CFR §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff

can perform other substantial gainful employment, and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

## B. The ALJ's Five-Step Inquiry for Plaintiff

The ALJ found that Plaintiff met the first two steps, AR 20-21, but was not presumptively disabled because she did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. AR 22-23. However, the ALJ found that Plaintiff had no past relevant work, AR 33, thus triggering the fifth step of the inquiry. At the fifth step, the ALJ found that Plaintiff's residual functional capacity ("RFC") allowed her to perform medium work with certain limitations as set out in his findings, AR 23-33, and that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 33-34.

## C. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) failing to properly consider all of Plaintiff's impairments and failing to provide sufficient reasons for not finding these impairments to be severe impairments; (2) failing to give proper weight to the opinion of Dr. Steven Graham; (3) failing to consider and provide for each of the seven strength demands in the RFC assigned to Plaintiff; (4) failing to include any limitations regarding Plaintiff's seizure disorder in his RFC after finding that Plaintiff's seizure disorder constituted a severe impairment; and (5) failing to properly evaluate and assess the credibility of Plaintiff's statements. *See* Docket Entry 14-1 at 1-2. Plaintiff argues that the Commissioner's decision should therefore be reversed, or in the alternative, remanded for further consideration by a new ALJ.

Sentence four of 42 U.S.C. § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertions of error are addressed as follows:

**1. The ALJ properly considered all of Plaintiff's impairments.**

Plaintiff contends that the ALJ failed to properly consider all of Plaintiff's impairments and failed to provide sufficient reasons for not finding these impairments to be severe. Plaintiff acknowledges that the ALJ found that Plaintiff's severe impairments included headaches, seizure disorder, history of right hand laceration, mild left neuroforaminal stenosis at L5-S1, bipolar affective disorder, and polysubstance abuse. *See* Docket Entry 14-1 at 6. Plaintiff argues, however, that she was also diagnosed with lumbar spine disorder, chronic pain syndrome, Methicillin-resistant Staphylococcus aureus ("MRSA"), posttraumatic stress disorder ("PTSD"), generalized anxiety disorder, and obsessive-compulsive disorder ("OCD"), and that the ALJ erred by failing to state his reasons for not finding these additional impairments to be severe. *Id*. Despite listing all of these additional impairments, Plaintiff discusses only lumbar spine disorder, headaches, and MRSA in her argument that the ALJ failed to properly consider all of Plaintiff's

impairments. *Id.* at 6-8. The Court will therefore limit its review to these three alleged impairments.

Plaintiff's assertion of error is unsupported by the record. Plaintiff argues that the ALJ "minimized the severity of [her] headaches," despite the ALJ's specific finding that Plaintiff's headaches constituted a severe impairment. *Id.* at 7; AR 21. Plaintiff further argues that the ALJ's analysis was "inaccurate" and "misplaced," although the Court assumes Plaintiff would request that, on remand, a separate ALJ would similarly find Plaintiff's headaches to represent a severe impairment. Plaintiff also argues that the ALJ improperly addressed Plaintiff's lumbar spine impairment by failing to specifically reference the findings from an October 25, 2010, CT scan. *See* Docket Entry 14-1 at 6-7. Plaintiff notes that this CT scan demonstrated "shallow disc bulge asymmetric towards the left" and "mild left neuroforaminal stenosis." *Id.*; AR 615.[2] Like Plaintiff's headaches, however, the ALJ found that Plaintiff's "mild left neuroforaminal stenosis at L5-S1" constituted a severe impairment. AR 21. This description of Plaintiff's lumbar condition is, almost verbatim, the exact finding from the October 25, 2010, CT scan which Plaintiff claims the ALJ failed to consider. AR 615. Plaintiff's argument is therefore without merit.

Plaintiff finally contends that the ALJ "minimized the severity of [her] MRSA." *See* Docket Entry 14-1 at 7. Her argument focuses on the ALJ's requirement that Plaintiff attend her initial hearing on June 9, 2011, via telephone, due to Plaintiff's "somewhat recent diagnosis of an infection which could be contagious." *Id.*; AR 45-46.[3] Plaintiff notes that she later attended

---

[2] Plaintiff incorrectly cites to page 646 of the administrative record.

[3] Plaintiff incorrectly cites to page 51 of the administrative record.

her second hearing on July 31, 2012, in person after the ALJ determined "it was best to proceed with an in-person hearing." *See* Docket Entry 14-1 at 8; AR 68-69.[4] Plaintiff agues that such a decision by the ALJ proves that her MRSA diagnosis is severe:

> [H]e failed to allow the Plaintiff to proceed with an in-person hearing just thirteen months prior and suggested that she testify by telephone from her car in the hearing office parking lot. If the ALJ himself was unnerved about the Plaintiff coming in close proximity to himself and any others in his office, surely he would find her infection to be "severe."

*See* Docket Entry 14-1 at 8. Plaintiff argues that the ALJ's request that Plaintiff appear via telephone demonstrates that he improperly found that the MRSA infection was not a severe impairment. This argument is erroneous in multiple ways. First, the ALJ did not "fail[] to allow the Plaintiff" to proceed with an in-person hearing, but instead requested that Plaintiff appear via telephone. The ALJ specifically advised Plaintiff, "I'm happy to have you testify today by telephone, but I want to acknowledge that you have the right to appear in person if that's what you want to do so that you'd be present with all of us during the hearing." AR 45. The ALJ also offered Plaintiff the opportunity to reschedule the hearing, to which Plaintiff responded, "[w]e can go ahead and proceed." AR 45-46.

Additionally, Plaintiff erroneously claims that the ALJ failed to give "a sufficient reason" for not finding Plaintiff's MRSA to be a severe impairment. *See* Docket Entry 14-1 at 8. The ALJ fully explained the basis for his finding regarding MRSA as follows:

> On the record, the claimant testified that she believes that she has an active MRSA infection. She explained the absence of relevant treatment records by noting that [she] keeps a supply of appropriate antibiotics in her home and takes them self prescribed and as needed. I note that there are not records subsequent to December 4, 2009 indicating that claimant has had an active MRSA infection or required appropriate antibiotics to treat a MRSA infection. No physician has

---

[4] Plaintiff incorrectly cites to pages 73-74 of the administrative record.

> indicated that claimant's MRSA infection causes any functional limitations. The claimant did not testify that her MRSA infection results in any significant work related limitations lasting for any period of 12 consecutive months.

AR 21. Despite Plaintiff's contention otherwise, the ALJ considered numerous factors in reaching his decision, including the lack of medical documentation indicating any treatment for MRSA after December of 2009, the lack of any physician testimony indicating that MRSA caused any functional limitations, and Plaintiff's testimony regarding any work-related limitations.

It is well established that a claimant bears the burden to show that a medically determinable impairment is severe and that such an impairment meets the twelve-month durational requirements of the Act. *See Harley v. Comm'r of Social Sec.*, 485 Fed.App'x 802, 803 (6th Cir. 2012). A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 CFR §§ 404.1520(c), 416.920(c)).[5] The Sixth Circuit has construed the step two severity evaluation as a "*de minimis* hurdle" in which an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of the test at step two is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).

---

[5] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b).

Although Plaintiff alleges that she suffers from additional severe impairments, there is no reference to any evidence in the record indicating that such impairments will have any impact on Plaintiff's ability to perform work-related activities. Furthermore, as noted by Defendant in its response to Plaintiff's brief, the ALJ's finding that Plaintiff has severe impairments satisfies step two of the five-step inquiry, thus triggering the next step of the evaluation. Any error by the ALJ in failing to find Plaintiff's additional impairments to be severe would not require reversal or remand, because if an ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives step two of the screening process, 20 CFR § 404.1520(a)(4); *Anthony v. Astrue*, 266 Fed.App'x 451, 457 (6th Cir. 2008), and both severe and non-severe impairments are to be considered by the ALJ in the remaining steps of the disability evaluation process. 20 CFR §§ 404.1523 and 404.1545(a)(2). Courts have consistently held that there is no reversible error when the ALJ fails to find that some impairments are severe, but finds that other impairments are severe and proceeds with the next step of the evaluation process. *Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). *See McGlothin v. Comm'r of Soc. Sec.*, 299 Fed.App'x. 516, 522 (6th Cir. 2008); *Anthony, supra; Fisk v. Astrue*, 253 Fed.App'x 580, 583 (6th Cir. 2007). The ALJ in this case found that Plaintiff suffered from six severe impairments. AR 21. The ALJ's failure to find that Plaintiff's additional alleged impairments were severe did not result in a conclusion that Plaintiff was not disabled, which would have ended the five-step inquiry. This assertion of error therefore does not warrant relief.

**2. The ALJ gave proper weight to the opinion of Dr. Steven Graham, pursuant to SSR 96-2p.**

Plaintiff next argues that the ALJ did not properly weigh the opinion of Dr. Steven Graham. She specifically references a document prepared by Dr. Graham entitled, "Headache

Questionnaire," AR 653-55, which Plaintiff submits contains "significant limitations" and "good reasons" for the answers contained therein. *See* Docket Entry 14-1 at 13. Plaintiff also questions the amount of weight given to "non-examining medical source opinions," including those provided by Dr. Rebecca Joslin and Dr. Victor O'Bryan, and argues that the ALJ "clearly used a double standard when assigning weight to the opinions of non-treating and non-examining physicians over the Plaintiff's treating source opinion." *Id*. at 11. Plaintiff further argues that the opinions submitted by Drs. Joslin and O'Bryan are invalid because they were not based on Plaintiff's complete medical record. *Id*. Plaintiff therefore requests that this matter be remanded in order to obtain an updated medical opinion. *Id*. at 12.

Defendant counters that, despite Plaintiff's contentions otherwise, the ALJ gave significant weight to the opinion of Dr. Graham, as evidenced by the limitations contained in the decision regarding Plaintiff's ability to carry out complex tasks and maintain attention and concentration for up to two hours. *See* Docket Entry 23 at 13, n. 6. Defendant further contends that Dr. Graham's opinion "did not express any opinion on the functional limitations stemming from Plaintiff's headache impairment," and therefore the ALJ properly used other evidence from the record to evaluate Plaintiff's functional limitations *Id*. at 15-16.

Social Security Ruling ("SSR") 96-2p provides an explanation as to when treating source medical opinions are entitled to controlling weight. Plaintiff emphasizes SSR 96-2p's statement that, "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." The Court notes that SSR 96-2p also states that, "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and that even if such an opinion is well-

supported, "controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record." 20 CFR §§ 404.1527 and 416.927 provide factors for evaluating a treating source's opinion which has not been given controlling weight:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 CFR §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). The regulations further hold:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 CFR §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). It appears in the instant case that the ALJ did not give Dr. Graham's opinion controlling weight. AR 31-32. The ALJ must therefore, pursuant to 20 CFR §§ 404.1527(c)(2)(ii) and 416.927(c)(2)(ii), provide good reasons for his decision not to give controlling weight to a treating source's opinion. The relevant excerpt from the ALJ's opinion states the following:

> At the time that he completed the [Headache Questionnaire], Dr. Graham had seen the claimant only once on October 15, 2010. Although she had been asked to return in four to six weeks, she had not returned during the intervening eight months. On the questionnaire, Dr. Graham indicates that the claimant initially had migraine headaches and currently had medication overuse headaches. Her symptoms were pressure/throbbing and aching and she was sometimes awoken from her sleep. Dr. Graham checked a box indicating that the claimant has headaches several times a month, but wrote to the side: "(per visit in Oct.)." He

finally checked a box indicating that the claimant's headaches last about 24 hours.  It appears to me that Dr. Graham, who again had seen the claimant just once, was merely reporting what he was told by the claimant.  He does not indicate whether the claimant's headaches caused any functional limitations or whether they could be controlled by the medication he prescribed on October 15, 2010, or any other medication.  It does not appear that Dr. Graham reviewed the claimant's medical records.  He was apparently unaware that the claimant had sought headache treatment from Dr. Beckham and Dr. Dong, but had failed to return after being denied narcotic pain medication.  He was also unaware of the claimant's many emergency room visits seeking narcotic pain medication for headaches and for a wide variety of other complaints.  I have considered Dr. Graham's treatment records and questionnaire in finding that the claimant's headaches are a severe impairment and in finding that claimant is limited in her ability to carry complex or detailed tasks and to maintain attention or concentration.

AR 31-32.  Plaintiff argues that the ALJ "attempted to deflect from the real issue at hand by pointing out that Dr. Graham completed the Headache Questionnaire after examining the Plaintiff for only the second time. . ."[6] This argument is unpersuasive, however, as it attempts to undermine one of the factors in assessing the weight given to a treating source's opinion, which holds that, "[w]hen the treating source *has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment*, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 CFR §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) (emphasis added).  The ALJ's acknowledgment that Plaintiff had only been seen once by Dr. Graham was not deflection, but rather a requirement inherent to his role in assessing the weight to give this opinion.  The ALJ also notes that Dr. Graham does not appear to have reviewed Plaintiff's medical records, as he was unaware that Plaintiff had sought initial treatment from Dr. Beckham and Dr. Jong, but chose not to receive follow up treatment after she was denied

_____

[6] This appears to be a misrepresentation, as the record indicates that Dr. Graham completed the questionnaire on June 7, 2011.  He saw Plaintiff for the second time on June 17, 2011.  Dr. Graham had therefore seen Plaintiff only once at the time he completed the questionnaire.

prescription medication. AR 32. This too is a reasonable and pertinent discussion by the ALJ, as it addresses potential voids in Dr. Graham's evaluation, which is relevant when assessing the amount of weight to give his opinion: "[w]hen the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 CFR §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Furthermore, the ALJ discusses Plaintiff's apparent lack of symptoms after her June 17, 2011 visit with Dr. Graham:

> Oddly, the claimant's emergency room visits and other complaints of headaches seem to stop, or at least are no longer documented, as 2011 and 2012 progress. Instead, most of her emergency room visits were for pain from other conditions, discussed elsewhere in this decision. The only other emergency room visits concerning any part of her head was a visit to Vanderbilt University Medical Center on December 18, 2011,[7] pertaining to complaints of left-sided face pain. However, staff noted a large number of controlled substance prescriptions, and the doctor was reluctant to write her a prescription for narcotics. She then eloped from the emergency room department without a formal discharge, suggesting she may have been seeking narcotics and not treatment for a headache (Ex. 35F).

AR 25-26. The ALJ clearly questions the severity of Plaintiff's headaches in light of her decision to stop seeking treatment for this condition after June 17, 2011. This evidence goes against Dr. Graham's findings that Plaintiff suffered migraines or medication overuse headaches several times a month for 24-hour periods. AR 653-655. This again demonstrates the ALJ's adherence to agency policy, including SSR 96-2p, which holds that, "[e]ven if a treating source's medical opinion is well- supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record." The ALJ found there was substantial evidence in the record contradicting Dr. Graham's findings regarding the severity

---

[7] The ALJ misstates the date of this visit, which appears to have taken place December 8, 2011. AR 1007-08.

and extent of Plaintiff's headaches. Plaintiff fails to point to any evidence in the record which would support Dr. Graham's finding.

Additionally, the ALJ correctly notes that Dr. Graham "does not indicate whether [Plaintiff's] headaches caused any functional limitations or whether they could be controlled by medication he prescribed on October 15, 2010, or any other medication." AR 32. The Court notes that Dr. Graham's questionnaire consists of four inquiries concerning the type of headache suffered by the patient, the associated symptoms, the frequency of the patient's headaches, and the length of a typical headache. AR 654-55. The questionnaire contains no recommendations for continued treatment, no prognosis, and no discussion of any functional limitations caused by such headaches. The note from Dr. Graham's lone examination of Plaintiff before completing the questionnaire, dated October 15, 2010, states only that he has "discussed the issue of medication overuse headaches, emphasizing the absolute necessity of total and complete discontinuation of short-acting analgesics." AR 550-551. As noted by the ALJ, Plaintiff was supposed to return to treat with Dr. Graham in 4-6 weeks, *Id.*, but failed to do so. The only opinion presented by Dr. Graham in the questionnaire states that Plaintiff's migraine headaches "initially started as migraines but then went into medication overuse headaches." AR 654. Plaintiff demands that Dr. Graham's opinion be given more weight and claims that he "cited significant limitations" with "good reasons for his answers," *See* Docket Entry 14-1 at 10-11, 13, but fails to point to any opinion or limitation in Dr. Graham's questionnaire which she believes should be given such additional consideration. The Court finds no such opinion or limitations in Dr. Graham's brief records.

Finally, despite the foregoing issues with Dr. Graham's evaluation, the ALJ still considered Dr. Graham's treatment in formulating the RFC assigned to Plaintiff, specifically in

finding her headaches to represent a severe impairment and in finding functional limitations in her ability to carry out complex or detailed tasks and maintain attention or concentration. AR 32. Plaintiff fails to acknowledge this in her brief, instead arguing that the ALJ "more closely scrutiniz[ed] the opinions of treating physicians and examining physicians than he did [non]treating[8] physician opinions." *See* Docket Entry 14-1 at 12. Plaintiff argues that these nontreating physicians rendered their opinions "prior to the submission of a vast amount of medical evidence," *Id.* at 11, but fails to cite any such evidence in the record which refutes the opinions of Dr. Joslin and Dr. O'Bryan. The Court finds that Plaintiff's argument is not supported by evidence, and does not warrant remand for the reasons discussed above.

### 3. The ALJ complied with the requirements of SSR 96-8p in assigning Plaintiff's RFC.

Plaintiff next argues that the ALJ "fail[ed] to consider and provide for each of the seven strength demands" in the RFC assigned to her in this case. *Id.* at 13. Although this appears to be an argument that the ALJ failed to address Plaintiff's exertional limitations, as the seven strengths involve exertional capacities (sitting, standing, walking, lifting, carrying, pushing, and pulling), Plaintiff then proceeds to quote with emphasis a portion of SSR 96-8p regarding both exertional and nonexertional factors. *Id.* Plaintiff also contends that, because the ALJ failed to include a function-by-function assessment in the RFC, specifically with respect to limitations regarding Plaintiff's seizure disorder, this case should be remanded. *Id.* This further muddles Plaintiff's argument under this assertion of error, as Plaintiff's fourth assertion of error also claims that the

---

[8] Plaintiff appears to have mistakenly listed "treating" physicians twice in this sentence. The Court assumes that Plaintiff intended to refer to "nontreating" physicians in the space indicated by this footnote.

ALJ erred by "failing to include any limitations regarding seizure disorder in his RFC." *Id*. In light of this confusion, the Court will address the ALJ's discussion of both exertional and nonexertional limitations under this assertion of error, but will address Plaintiff's seizure disorder when discussing Plaintiff's fourth assertion of error.

SSR 96–8p requires the ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, pulling) and nonexertional (manipulative, postural, visual, communicative, mental functions) capacities of the claimant in determining the claimant's RFC. As noted by Plaintiff, SSR 96-8p provides that an "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and that "[e]ach function must be considered separately. . . ."

Significantly, the Sixth Circuit has held that, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed.App'x 542, 547-48 (6th Cir. 2002). Of note, SSR 96-8p requires the ALJ to consider each function separately, but does not state that the ALJ must discuss each function separately in the narrative of the decision. The Sixth Circuit has held that an ALJ's RFC assessment complies with SSR 96-8p as long as the RFC specifies the claimant's exertional and nonexertional limitations. *Id*. In specifying such limitations, the ALJ need only explain how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform work-related activities, and explain the resolution to any inconsistences contained in the record. *Delgado*, 30 Fed.App'x at 548. Moreover, SSR 96-8p does not require the ALJ to discuss those capacities for which no limitation is alleged. *Delgado*, 30 Fed.App'x at 547.

Upon review of the record, the Court finds no error in the ALJ's RFC regarding exertional capacities. After evaluating all of the objective medical evidence of record and Plaintiff's testimony, the ALJ determined that Plaintiff retained the RFC to perform "medium work" as defined in 20 CFR §§ 404.1567(c) and 416.967(c) with the following limitations:

> [S]he cannot more than frequently use her dominant right hand for handling, fingering, or feeling; must avoid all exposure to hazardous work environments; is limited to simple, repetitive work; cannot maintain attention or concentration for more than two hours without interruption; and cannot have more than occasional interaction with the public.

AR 23. The ALJ discussed these limitations extensively in the opinion, which included citations to medical records and Plaintiff's testimony. AR 23-33. For example, the ALJ discussed Plaintiff's 2009 surgery for a right hand laceration and her associated problems with making a fist and dropping things, AR 24, while noting that Plaintiff later showed "excellent function of her right hand" except for "difficulty making a fist and fully extending her right hand." AR 26. The ALJ also discussed Dr. Thomas Limbird's recommendations for continued treatment of Plaintiff's hand. AR 26. The ALJ addressed Plaintiff's mental issues, including her diagnosed bipolar disorder, a psychological evaluation by Dr. Kathryn Sherrod in September 23, 2009, and a medical records review by psychologist Dr. Rebecca Joslin on October 5, 2009, AR 26-27. The assessments and recommendations of both Dr. Sherrod and Dr. Joslin were discussed in detail. AR 26-27.

Additionally, as noted by Defendant, the ALJ specifically opined that Plaintiff's RFC included the ability to perform "medium work as defined in 20 CFR 404.1567(c) and 416.967(c)," which both include "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." The ALJ assigned no other exertional limitations and included additional nonexertional limitations. AR 23.

Plaintiff's woefully brief argument consists of excerpts from SSR 96-8p and a claim that the ALJ's decision did not include a function-by-function assessment. *See* Docket Entry 14-1 at 13. As discussed *supra*, however, SSR 96-8 does not require the ALJ to provide a written function-by-function analysis in his opinion. Plaintiff fails to allege any inconsistencies in the record that the ALJ would be required to explain, nor does she point to any evidence in the record that would support additional or more severe limitations than those implemented by the ALJ. The Court rejects this assertion of error.

### 4. The ALJ properly assigned limitations regarding Plaintiff's seizure disorder.

Plaintiff next contends that the ALJ erred by failing to include any limitations in the RFC involving her seizure disorder despite finding the seizure disorder to be a severe impairment. *See* Docket Entry 14-1 at 13-14. In support, Plaintiff quotes an unpublished opinion in which the Court notes that "failure to find a specific impairment severe becomes reversible error when the ALJ fails to consider the impairment at the subsequent steps of the analysis, specifically at step four." *Id.* (citing *Dodson v. Comm'r of Soc. Sec.*, 2013 WL 4014715, at *2 (E.D. Tenn. Aug. 6, 2013)).

Plaintiff's reliance on this case is misplaced for multiple reasons. For one, the *Dodson* case involves a scenario in which a claimant argues that the ALJ erred by finding that the claimant's anxiety was not severe. *Dodson*, 2013 WL 4014715 at *2. It does not allege a failure by the ALJ to include limitations in an RFC, as Plaintiff does in the instant case. Additionally, although Plaintiff appears to rely on the quoted language from *Dodson* because it begins with "Plaintiff is correct to note. . .," the Court proceeds to rule against the claimant and finds that the ALJ did *not* commit reversible error. *Id.* ("After considering the parties' filings and reviewing the

22

applicable law, this Court agrees with the magistrate judge's findings. . . the ALJ appropriately used the four broad functional areas to guide his reasoning and concluded Plaintiff only has mild limitations"). Nevertheless, Plaintiff proceeds to argue that the *Dodson* opinion, which does not involve an alleged failure to include additional functional limitations, and ultimately affirms the ALJ's decision, "makes it clear that the ALJ has committed reversible error in our case at hand." *See* Docket Entry 14-1 at 14. This *non sequitur* does not in any way establish that the ALJ committed reversible error. The Court acknowledges that, after finding a claimant to have a severe impairment, the ALJ is required to then also consider any non-severe impairments in formulating the RFC. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). This is not, however, the issue in dispute according to Plaintiff's own assertion of error. Without specifically asserting such, Plaintiff appears to argue that the ALJ erred by not considering one of the severe impairments, namely her seizure disorder, in formulating the assigned RFC. Plaintiff suggests that "it seems as if there should certainly be limitations which result from this impairment." *See* Docket Entry 14-1 at 14. Plaintiff apparently fails to recognize the ALJ's discussion and explicit limitation with respect to her seizure disorder:

> Ultimately, I reject the initial State agency physical assessment that no "severe" physical impairment is present, as this is quite clearly not the case (Ex. 7F). However, that examiner had access to only a very limited portion of the claimant's medical records. A subsequent State agency medical consultant opined that the claimant could perform medium exertional category activity, *with appropriate reduction in hazard exposure considering her then more recent history of a seizure.* The undersigned finds that this opinion remains consistent with the record as a whole.

AR 33 (emphasis added). The ALJ included this limitation in the RFC. AR 23. The ALJ discussed Plaintiff's lack of treatment for several alleged medical conditions, including seizure disorder, noting that, "[s]he has not had a seizure in years." AR 31. As such, the ALJ clearly

considered Plaintiff's seizure disorder and included a limitation in the RFC which requires that she avoid all exposure to hazardous work environments. AR 23. Plaintiff's contention that the ALJ failed to do so goes against the evidence contained in the record, and is therefore rejected by the Court.

**5. The ALJ properly evaluated the credibility of Plaintiff's statements.**

Plaintiff's final assertion of error posits that the ALJ improperly discredited her statements and "could provide no actual reason indicating that she was being anything but truthful in her testimony" regarding the frequency and severity of her symptoms. *See* Docket Entry 14-1 at 17. Plaintiff argues that the ALJ improperly considered her daily activities, *Id*. at 14-15, and improperly faulted her for not seeking specialized treatment, *Id*. at 16-17, but the crux of Plaintiff's argument is that the ALJ improperly considered her drug-seeking behavior in assessing her credibility. *Id*. The Court cannot agree with these contentions, based on the following analysis.

20 CFR §§ 404.1529 and 416.929 describe the methods by which a claimant's symptoms are evaluated by the agency. As noted in SSR 96-7p, this evaluation involves a two-step process that first requires a finding by the adjudicator that there is an underlying impairment that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7 explains that, once such a finding is made, the adjudicator must:

> [E]valuate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements

based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

The ALJ is charged with evaluating a claimant's credibility at the administrative hearing. The ALJ's credibility finding is entitled to deference due to the ALJ's "unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). The ALJ's conclusions regarding credibility "should not be discarded lightly," *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993), and the ALJ may "dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict" such allegations. *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). However, if the ALJ rejects a claimant's testimony regarding her complaints, "he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Plaintiff claims that the ALJ's discussion of her drug-seeking behavior, which the ALJ found to undermine the veracity of Plaintiff's testimony with respect to her symptoms, is "an insufficient reason to decrease the credibility of the Plaintiff." *See* Docket Entry 14-1 at 16. Plaintiff then erroneously cites SSR 82-60 as support, which was rescinded and replaced by SSR 13-2p as of March 22, 2013. *Soc. Sec. Rul. 13-2,* 2013 WL 621536. Regardless, Plaintiff appears to rely on a portion of the now abrogated SSR 86-20 which states that, ". . . a diagnosis of drug addiction or alcoholism should not have an effect on a disability evaluation that is adverse to the

applicant." This is a fallacious argument, however, which misinterprets the basis for the ALJ's discussion of Plaintiff's drug-seeking behavior. As noted by Defendant, the ALJ did not find Plaintiff not disabled due to drug abuse, but instead found that her "subjective statements about her symptoms were not credible. . . because she often exaggerated her symptoms to obtain pain medication." *See* Docket Entry 23 at 24. This is evidenced by the ALJ's analysis of Plaintiff's symptoms, which included a discussion of Plaintiff's numerous complaints regarding alleged back pain, severe headaches, and the functional limitations that Plaintiff claimed were caused by such conditions. AR 24. The ALJ then set out a lengthy discussion of Plaintiff's medical treatment, which compared Plaintiff's alleged symptoms with the frequency of her treatment and objective medical findings. AR 24-28. This discussion also contained numerous references to Plaintiff's drug-seeking behavior, including her noncompliance with a pain management agreement and subsequent discharge, AR 25, her elopement from an emergency department without formal discharge after a physician refused to write additional prescriptions for her, AR 26, and suspicion of both drug abuse and the illicit sale of her prescribed medication. AR 28. After establishing this background, the ALJ proceeds to explain his reasons for discrediting Plaintiff's testimony regarding her alleged symptoms, with additional citations to evidence in the record demonstrating Plaintiff's rampant solicitation of narcotics while claiming to suffer from a variety of symptoms. AR 27-33.

Despite Plaintiff's contention otherwise, the ALJ's discussion provides an abundance of evidence in support of his decision to discredit Plaintiff's statements regarding her alleged symptoms. This includes references to physicians who suspected that Plaintiff was exaggerating her symptoms in order to obtain pain medication. On May 12, 2012, Dr. James L. Davidson noted:

> [Plaintiff] has in the past shown drug-seeking activity. . . This patient has been evaluated many times in the past. It was felt best to avoid narcotic management unless the patient had new tests or physical findings demonstrating pathology. The patient [left] shortly after being told her narcotics would be held until the results of diagnostic studies. She was found to [have] left against medical advice with no apparent disability at the time of her departure.

AR 30, 1184-85. On May 30, 2012, Dr. Thomas Aaron Bradbury noted:

> [Plaintiff] comes into the emergency department today complaining that she has had a week's worth of right sided low back pain radiating down her right leg, hurts worse when she moves around. . . The patient was actually here for something similar to this on May 12, 2012, and when she did not get any narcotics, left the emergency department without letting anybody know. . . The patient has apparently had multiple interactions with drug seeking behavior, looking for narcotics.

AR 27, 1182-83. The ALJ also cites an October 17, 2010 office note from Dr. Melinda Lee, who allegedly stated that Plaintiff was "thought to be drug seeking. . . The patient does *not* seem legitimate to me. . ." AR 29 (emphasis added). The Court notes, however, that this is a misquote by the ALJ, as the October 17, 2010 note actually reveals that Dr. Lee believed that Plaintiff was a patient with legitimate symptoms:

> In summary, the patient is a 26-year-old female recently seen in this emergency department last night for a mental evaluation, thought to be drug seeking who returns today with acute on-chronic fibromyalgia pain after allegedly running out of her Lortab. *The patient does seem legitimate to me.* I have reviewed her medical record here and she does not frequently present with pain related complaints.

AR 1162 (emphasis added). Despite the ALJ's misquote, the Court finds this error to be harmless in light of the ALJ's reliance on several additional opinions from medical providers suggesting that Plaintiff was, in fact, demonstrating drug-seeking behavior. *See* AR 30, 31, 1009-10, 1252. The ALJ specifically states that he does not credit Plaintiff's testimony regarding the severity of her impairments because she "has an extremely well documented history of abusing both prescription drugs and street drugs, and of exaggerating the extent of her symptoms in order to

obtain drugs." AR 28. Additionally, the ALJ noted inconsistencies in Plaintiff's statements

regarding alleged side effects of her prescription medication:

> The claimant indicated in her Disability Report-Appeal (Ex. 11F) that her prescribed medications were causing nausea, headaches, hot flashes, menopause state, mood swings, and drowsiness. I note that claimant did not mention any medication side effects during her testimony at either hearing. I further note the absence of any indication in claimant's medical records that she reported significant side effects to prescribing physicians or that any side effects could not be addressed by adjusting her prescriptions. The record does not support a finding that claimant has had functionally significant side effects for any period of 12 consecutive months.

AR 31. The ALJ also notes that, despite Plaintiff's testimony that she frequently experiences

severe headaches, her "emergency room visits and other complaints of headaches seem to stop,

or are at least no longer documented, as 2011 and 2012 progress." AR 26. Plaintiff's assertion

that the ALJ "could provide no actual reason indicating that she was being anything but truthful"

represents a severe disregard of the evidence contained in the record.

Plaintiff makes additional claims that the ALJ erred by improperly considering her daily

activities, by faulting her for not seeking "specialized treatment," and by faulting her for

stockpiling antibiotics intended to treat MRSA. *See* Docket Entry 14-1 at 15-17. The Court is

unpersuaded by any of these arguments. Plaintiff points to the ALJ's discussion of her daily

activities, in which he notes that Plaintiff "has stated she has no problems caring for her own

personal needs such as bathing, dressing, grooming, and feeding herself." *Id.* at 15; AR 22. She

claims that this discussion by the ALJ "is an insufficient reason to decrease the credibility of the

Plaintiff." *See* Docket Entry 14-1 at 15. However, as noted by Defendant, Plaintiff's daily

activities are a required factor to be considered in an ALJ's credibility determination, pursuant

to SSR 96-7p. *See* Docket Entry 23 at 25, n. 10. Additionally, although Plaintiff's argument may

have had merit if the ALJ had relied solely on this example of performing daily chores in finding

her statements not credible, the ALJ clearly provided numerous reasons for discounting Plaintiff's credibility, as discussed *supra*.

The Court further notes that Plaintiff's argument regarding her failure to seek specialized treatment is baseless. Plaintiff points to no evidence in the ALJ's decision wherein he discounted her credibility based on her inability to afford medical insurance. While the Court sympathizes with this predicament, there is no indication that the ALJ based his finding on Plaintiff's financial wherewithal. The ALJ instead questioned the consistency of Plaintiff's purported symptoms during her numerous emergency room visits. The ALJ states:

> The claimant's testimony that she constantly drops things since her right hand surgery in 2009 is not consistent with the absence of any complaint to any medical provider of right hand weakness. The Claimant testified that she had headaches that cause nausea and vomiting three times per week, and that the headaches last for up to three days. This is inconsistent with her failure to receive any significant treatment for headaches for some time now. I note that claimant had eight emergency room visits for headache pain during 2010 and two visits in 2011. In contrast, claimant had 21 emergency room visits in 2010, 29 emergency room visits in 2011, and 21 emergency room visits to date in 2012, without regular mention of headaches. The picture for her back pain is similar, with few of her emergency room visits being related to back pain.

AR 31. The Court grants significant deference to these findings by the ALJ, pursuant to *Buxton, supra*.

Plaintiff's final contention involves the ALJ's statement that he could not credit Plaintiff's testimony "that she manages her supposedly active MRSA infection using antibiotics that she has stockpiled in her home." AR 31. Plaintiff argues that this testimony actually supports her credibility. *See* Docket Entry 14-1 at 17. In light of Plaintiff's documented drug-seeking behavior and magnification of symptoms, the Court fails to recognize how Plaintiff's stockpiling of antibiotics bolsters her credibility regarding her alleged symptoms. Not only is such action likely noncompliant with the prescribing physician's directives for use of such medication, but it also

lends support to the previously discussed suspicion that Plaintiff accumulates prescription medication in order to sell it. AR 28, 759. The Court therefore finds this argument, as well as Plaintiff's assertion of error, to be without merit.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) be DENIED and that the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge